BLANCHE PAGE, The. See Cases Nos. 7,-296 and 7,297.

## Case No. 1,526.

### BLAND v. SOUTHERN EXP. CO.

[1 Hughes, 343.] [1]

Circuit Court, E. D. Virginia. April 18, 1877.

EXPRESS COMPANIES — COLLECTION OF DRAFT — LIABILITY FOR ACT OF AGENT ACTING IN ANOTHER CAPACITY.

Bulky produce, not such as an ordinary express company usually transports, was shipped by the freight cars of a railroad company, to a distant railroad wayside depot, to the name of the person who shipped it; this person wrote on the railroad receipt the words, "Deliver to S. H. Brown & Co.," who were living at the place of destination, and drew a sight draft upon S. H. B. & Co. for the value of the produce, and took the railroad receipt and draft to the office of an express company, delivered them to a clerk of the company, and obtained the express company's receipt for the draft "for collection." The depot agent at the destination of the goods, who was also the agent of the express company, delivered the produce to S. H. B. & Co. as agent of the railroad company, upon ascertaining from the writing on the face of the receipt of the railroad company, sent him by the express company, that the goods were intended for S. H. B. & Co. In an action brought by the shipper of the produce, against the express company for the amount of the draft, held, that the railroad company had a right to deliver such bulky produce to the consignees as soon as they were identified; that the express company did not by construction or actually have custody of the produce, and was not bound to take custody of it, and did not become liable for its value in consequence of its own agent (acting as agent of the railroad company) having delivered the produce, instead of holding it until the payment of the drafts.

At law. This was an action of assumpsit [J. B. Bland against the Southern Express Company] for the value of certain shipments, chiefly of bulky produce, made under the circumstances detailed by the court in its written decision. There was a trial by jury, and a verdict for plaintiffs. A motion for a new trial was introduced. [Motion granted.]

Robert Howard and John S. Wise, for plaintiffs.

Robert Ould, for defendants.

The following was the decision of the judge:

HUGHES, District Judge. The plaintiffs, J. B. Bland & Co., living and doing business in Richmond, made three several shipments on freight cars of the Chesapeake and Ohio Railroad Company, chiefly of heavy produce, including a carload of hay, 110 barrels of flour, 150 bushels of meal, 75 bushels of corn, to Cotton Hill depot, in the mountains of West Virginia, consigned to themselves (J.

---

[1] [Reported by Hon. Samuel Blatchford. Circuit Judge, and here reprinted by permission.]

[1] [Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission.]

B. Bland & Co.). These shipments were, nearly all of them, not of such articles as were in the line of business of the Southern Express Company. The plaintiffs took receipts of the railroad company for each shipment. They wrote on the face of these receipts the words, "Deliver to S. H. Brown & Co.: J. B. Bland & Co." They took these drafts and receipts to the office of the express company in Richmond; delivered them to one of the clerks in the office, and obtained the company's receipt for the drafts, "for collection." The depot agent of the railroad company at Cotton Hill and the agent of the express company there were one and the same person. As soon as this agent learned from the writing on the face of the railroad company's receipt, that the shipments were intended for S. H. Brown & Co., he delivered them to that concern, stating in evidence that he delivered them as agent of the railroad company. He also presented the drafts to the concern for payment, which they were unable to make. He duly returned the drafts and receipts to the express company at Richmond with a memorandum on them, "not paid for want of funds," and the plaintiffs were duly notified of their action. This action is brought for the face value of these three drafts, and is founded on the supposition that the express company became liable by having delivered the produce shipped before the drafts were paid. The course of making shipments by freight cars on the railroads of this country, is for the shipper to pay or not pay the freight charges on delivering the goods for shipment, to take the railroad company's receipt, and to mark the consignee's name on the goods, or indicate it to the company on making the shipment. The goods or produce are delivered to the consignee by the depot agent at the place of destination, on arrival, on demand. It is not the custom of railroad companies to receive drafts or bills of exchange for collection at all, not even drafts for the value of the particular shipments on which they are drawn, or to hold the goods or produce until these drafts are paid. Such a proceeding would be foreign to the business of railroad companies; is never allowed by them; is generally impracticable in itself; and is wholly unknown in practice. There are many reasons why this proceeding could not obtain; one of which is, that necessity requires that produce should be delivered promptly on arrival, especially at wayside depots, being in general too bulky to admit of being stored, and being such as would clog and glut wayside depots beyond their capacity. The depot in this case was in a narrow pass in the mountain, on the banks of a turbulent river; and, of the produce shipped by the plaintiffs, there was, among other things, a carload of hay which could not be stored at all, a carload of flour which would unduly incumber the small depot building there, and other things equally bulky and inconvenient to store. It would have been vain, idle, and preposterous for the plaintiffs in this cause to have endeavored to induce the railroad company to agree to hold their produce until the drafts for its value were paid. That would have been foreign to the usage of the railroad company, probably impracticable in itself, and a sort of engagement which the company could not, consistently with its modes of transportation, its interests, and its principles of business, make with any customer.

The plaintiffs here have sought to accomplish by indirection what it was not practicable for them to do by direction, of course without improper motive. They sought to bring the express company under obligation to do what the railroad company would not do. They sought so to contrive as to secure the holding at Cotton Hill depot, until their drafts were paid, of the bulky produce which they had shipped there, in spite of the usage of the railroad company not to hold produce until drafts drawn against it were collected. The Southern Express Company, like other express companies, does two kinds of business. 1st. It carries in express cars, light freights, called express freights; often collecting the value of the parcels carried on C. O. D. drafts. 2d. It receives for collection and collects drafts drawn upon places where there are no banks, not accompanied by goods shipped by express to the persons on which such drafts are drawn. It was the latter kind of transaction which the express company in this case undertook for the plaintiffs. It received nothing besides the drafts but railroad receipts, having on their face a designation of the firm to whom the produce should be delivered. The writing on the face of these receipts did not say that the receipts were not to be delivered to S. H. Brown & Co. until the drafts were paid, and even if it implied as much, there was no breach of such an order by the express company; for it had custody of nothing but the drafts and receipts, and has never parted with the custody of either. The writing on the face of the railroad receipts did not in terms give any direction in regard to the produce, which was in custody of the railroad company; but, even if it had done so, it could not thereby have imposed upon the express company an obligation to hold freight which was not in their custody, in violation of the usage and convenience of the railroad company, and in a way probably impracticable in itself. The plaintiffs could not by delivering a draft for collection to an express company, coupled with a railroad receipt, impose upon the express company, by implication, through the inadvertence of a clerk of the express company in receipting for the draft, an obligation to do that with freight, shipped by the railroad, which they could not by any possibility have induced the railroad company itself to do.

The railroad company by its agent had a right, at such a depot as Cotton Hill, to deliver such bulky and cumbrous articles as were shipped in their cars, to the person to whom they were shipped, as soon as it identified that person; and neither the plaintiffs alone, nor the plaintiffs and express company together, could take away or limit that right. It could only be limited by an agreement of the railroad company itself. That right the railroad company through its own agent exercised in this case. If there was any responsibility incurred by so doing, the responsibility is on the railroad company, for it alone had the custody of the produce. The express company did not only not have custody, but was justified in not taking custody of such produce at such a place, for the purpose, even if it had been practicable to hold it, of holding it in violation of the usage of the railroad company. Such an undertaking would have been out of its line of business, and could not be implied from any routine action of one of its clerks. The declaration in this case charges throughout, that the express company had custody of the produce which was shipped by the plaintiffs. The proof is that the produce was never in custody of the express company, but that it was delivered to S. H. Brown & Co. by the railroad company, without ever having been in the custody of the express company. I think the verdict was so clearly contrary to the law and the evidence as to justify the court in setting it aside, which is accordingly done.